UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
x
MAURICE OPARAJI,

        Plaintiff,        **MEMORANDUM AND ORDER**
                                        Case No. 04-CV-1554 (FB)

    -against-

VIRGIN ATLANTIC AIRWAYS, LTD,

        Defendant.
--------------------------------------------------------
x

*Appearances:*
For the Plaintiff:                                    *For the Defendant:*
MAURICE OPARAJI, *pro se*                 CHRISTOPHER CARLSEN, ESQ.
245-11 133rd Road                           Condon & Forsyth LLP
Rosedale, NY 11422                         Times Square Tower
                                                  7 Times Square, 18th Floor
                                                  New York, NY 10036

**BLOCK, Senior District Judge:**

        Plaintiff, Maurice Oparaji ("Oparaji"), proceeding *pro se*, sues defendant, Virgin Atlantic Airways, LTD ("Virgin Atlantic"), alleging that Virgin Atlantic personnel wrongfully accused him of traveling under a forged passport. Pursuant to Federal Rule of Civil Procedure 56, Virgin Atlantic moves for summary judgment on the grounds that Oparaji's claims are governed by the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934) – more commonly known as the Warsaw Convention – and that it is not liable under that treaty. For the following reasons, Virgin Atlantic's motion is granted.

**I.**

In 2002, Oparaji, a naturalized United States citizen, purchased from Virgin Atlantic a round-trip ticket for air travel from New York City to Lagos, Nigeria, *via* London, England; the ticket erroneously listed the passenger as "Oparaki/Maurice." On January 18, 2002, Oparaji completed the outbound portion of his trip without incident.

On March 15, 2002, Oparaji arrived at the Lagos airport for the Lagos-London leg of his return trip. After clearing various security checkpoints, he proceeded to his gate, where he joined the line of passengers waiting to board. At the jet bridge connecting the gate to the aircraft, he presented his boarding pass and United States passport to Lawrence Isaac ("Isaac"); the parties dispute whether Isaac was an employee of Virgin Atlantic or of an independent contractor providing security services for Virgin Atlantic.

Isaac questioned the authenticity of Oparaji's passport and asked him to step out of line. After showing the passport to other security agents, Isaac asked Oparaji to go into an office located a few yards from the gate, where Isaac and other Virgin Atlantic personnel further questioned Oparaji about his passport; eventually, they called in Allen Spencer ("Spencer"), a British official responsible for checking the travel documents of passengers traveling to the United Kingdom. After inspecting the passport and placing a call to the British Embassy, Spencer concluded that Oparaji should be allowed to travel with the passport. The Virgin Atlantic personnel then told Oparaji he was free to leave.

Instead of boarding his flight, however, Oparaji remained in the office and demanded a written explanation. An argument ensued, attracting the attention of the Nigerian police. The police asked Oparaji to accomapny them to another office in the

2

airport, where he explained what had happened and prepared a written statement.

The police then escorted Oparaji back to the gate, where he was informed that he could not board and that he should retrieve his luggage from the tarmac. He later learned from an airport official that the flight had closed for boarding.

Having missed his flight, Oparaji asked Virgin Atlantic to endorse his ticket to another airline; his request was declined. He then purchased a ticket to London from British Airways, exhausting his funds in the process. He claims that upon arrival at London's Heathrow Airport, he was forced to go "begging for money from whoever wanted to listen to me," and that he "was lucky to collect from good Samaritans" enough money to buy food and a ticket for a flight back to New York. Oparaji Aff. ¶ 28.

In 2004, Oparaji sued Virgin Atlantic in New York City Civil Court, seeking $160,000 in damages for "failure to provide proper services," "breach of contract," "loss of luggage," "loss of time from work," "emotional distress," "abandonment," "defamation" and "false imprisonment." Endorsed Compl. Virgin Atlantic, an English corporation, removed the suit to this Court on the grounds (1) that "the matter in controversy exceeds the sum of $75,000, and is between citizens of a state and a citizen of a foreign state," Not. of Removal ¶ 3, and (2) that "the action arises under a treaty of the United States," namely, the Warsaw Convention, *id.* ¶ 7.

Oparaji, who does not oppose removal, has filed an amended complaint asserting numerous claims against Virgin Atlantic; liberally construed, the claims seek two broad categories of damages: (1) personal-injury damages (such as injury to reputation and

3

emotional distress) flowing from Virgin Atlantic's alleged accusation that Oparaji's passport was forged, and (2) economic damages (such as lost wages and out-of-pocket expenses) resulting from his inability to board the Virgin Atlantic flight from Lagos. Oparaji claims in his affidavit opposing summary judgment that he also suffered a separated shoulder when he retrieved his luggage from the tarmac, but that assertion contradicts his deposition testimony that he did not suffer any "physical injury that you can see." Oparaji Dep. at 75. "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's own prior deposition testimony," *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); the Court therefore excludes Oparaji's claims of physical injury from its analysis.

## II.

Although Oparaji proceeds under a variety of legal theories, the Warsaw Convention provides his exclusive remedy to the extent his claims fall within its scope. *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003) ("[An international airline passenger] whose injuries fall with the scope of the Warsaw Convention is either entitled to recovery under the Convention or not at all.") (citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999), and *King v. American Airlines, Inc.*, 284 F.3d 352 (2d Cir. 2002)).[1]

---

[1] On July 31, 2003, the United States Senate ratified the Montreal Convention (or, more formally, the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. 106-45). *See* 149 Cong. Rec. S10869 (2003). "[T]he Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention," *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004); however, it does not apply here. *See id.*

This is so even if the claims are not viable under the Convention. *See King*, 284 F.3d at 357 ("[T]he Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention.") (citing *Tseng*, 525 U.S. at 174-76)).

In determining whether a claim falls within the scope of the Convention, courts "are directed to look to [its] liability provisions." *King*, 284 F.3d at 358 (citing *Tseng*, 525 U.S. at 171-72). Two of the Convention's three liability articles are implicated here:

- Article 17, which provides that

  the carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking; and

- Article 19, which provides that

  the carrier is liable for damages occasioned by delay in the carriage by air of passengers, luggage or goods.[2]

The Court will address each of these two articles in turn.

**A. Article 17**

"A claim for an injury to a passenger is preempted by Article 17 as long as

---

at 373 (holding that Convention does not apply to conduct occurring before it entered into force on November 4, 2003).

[2]The third liability article, Article 18, relates solely to the loss or destruction of luggage or other cargo and is, therefore, not implicated here.

5

the harm was sustained 'in the course of any of the operations of embarking' on an aircraft." *King*, 284 F.3d at 360 (quoting Article 17). As Oparaji was, quite literally, in the process of embarking when he was accused of traveling with a forged passport, he can recover damages for that incident only to the extent allowed by Article 17.

"Under Article 17, an air carrier is liable for passenger injury only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered [death], [wounding], or [any other bodily injury], and (3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking." *Eastern Airlines v. Floyd*, 499 U.S. 530, 536 (1991). The first and third elements are satisfied here: The questioning of Oparaji about his passport, though intentional, qualifies as an "accident" under Article 17. *See Air France v. Saks*, 470 U.S. 392, 405 (1985) (defining "accident" as "an unexpected or unusual event or happening that is external to the passenger"); *see also King*, 284 F.3d at 360 ("Intentional torts may, in some instances, constitute accidents actionable under the Convention."). And as noted, that incident took place as Oparaji was preparing to embark.

The second element, however, is not present. Oparaji did not suffer death or wounding, and the Supreme Court has squarely held that the term "bodily injury" "does not allow recovery for purely mental injuries." *Floyd*, 499 U.S. at 534; *see also Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 400 (2d Cir. 2004) ("[M]ental injuries are recoverable under Article 17 only to the extent that they have been caused by bodily [i.e., physical] injuries."). Apart from Oparaji's belated claim that he suffered a separated shoulder

6

retrieving his luggage (which, as previously explained, the Court will not consider), there is no evidence that the questioning of his passport caused him any physical injury; therefore, Oparaji cannot recover personal-injury damages under Article 17.

**B. Article 19**

Since Article 17 deals with airline liability for personal injuries, *see Tseng*, 525 U.S. at 169, it does not cover – and therefore does not preempt – Oparaji's claims for damages resulting from his missed flight; however, those claims come within the scope of Article 19.

By its terms, Article 19 covers "damages occasioned by delay." "The history of the Warsaw Convention indicates that the drafters of the Convention did not intend the word "delay" in Article 19 to extend to claims . . . that arise from the total nonperformance of a contract." *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 445 (7th Cir. 1987). Nevertheless, "[a] passenger cannot convert a mere delay into contractual non-performance by choosing to obtain more punctual conveyance." *Paradis v. Ghana Airways, Ltd.*, 348 F. Supp. 2d 106, 112 (S.D.N.Y. 2004). In *Paradis*, the defendant airline canceled a scheduled flight. *See id.* at 108. Rather than wait for the next scheduled flight and seek compensation for the delay, the plaintiff passenger purchased a ticket on another airline and sued for breach of contract. *See id.* at 109. The district court held that the claim was preempted by Article 19, which did not allow for recovery of the cost of substitute transportation. *See id.* at 114. The Second Circuit recently affirmed "essentially for the reasons stated in the opinion of the district court." *Paradis v. Ghana Airways, Ltd.*, 2006 WL 2456499 (2d Cir. Aug. 18, 2006) (unpublished).

As in *Paradis*, Oparaji's claim for damages occasioned by his missed flight are within the scope of Article 19; however, Oparaji's decision to secure substitute travel does

not expose Virgin Atlantic to liability under that article.

### III.

Virgin Atlantic's motion for summary judgment is granted. Oparaji's complaint is dismissed.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 19, 2006